It was error to dismiss appellant's bill on the grounds stated, and the decree entered to that effect should be reversed.

Reversed.

---

### In re APPEL.

### In re McPECK.

(Circuit Court of Appeals, First Circuit. August 13, 1908.)

#### No. 756 (Original).

1. NE EXEAT—WRIT FOR ARREST OF BANKRUPT—CONSTRUCTION OF BOND.
   A bond given to secure the release of a bankrupt when arrested under a writ of ne exeat regno, and conditioned that he shall not depart from the district, is to be construed in accordance with its terms, and the departure of the bankrupt from the district without leave of the court is a breach thereof, although he is present to abide the judgment of the court when rendered.

2. BANKRUPTCY—POWERS OF COURT—CHANCER OF BOND.
   A court of bankruptcy, acting either upon the analogy of a court of equity or of the power possessed by courts of the United States in actions at law, has power to chancer a bond given for the release of a bankrupt when arrested under a writ of ne exeat.

Petition of Trustee to Revise in Matter of Law the Proceedings of the District Court of the United States for the District of Massachusetts, in Bankruptcy.

Lee M. Friedman (Morse & Friedman, on the brief), for petitioner.

Edmund A. Whitman (Elder & Whitman, on the brief), for respondent David Appel.

Before COLT, PUTNAM, and LOWELL, Circuit Judges.

LOWELL, Circuit Judge. Majer Appel was adjudged a bankrupt January 23, 1905, and thereafter McPeck was elected his trustee. On July 26, 1906, McPeck filed a petition in the District Court, setting out that the bankrupt had fraudulently concealed from the trustee a considerable sum of money belonging to the bankrupt estate; that the bankrupt was a resident of Adams, within the district of Massachusetts, at the commencement of the bankruptcy proceedings; "that thereafter, and while said proceedings were still pending, said Appel removed to the state of New York, and that he has not since been a resident of Adams, but has continued to keep within the said state of New York; * * * that said Majer Appel is now within the jurisdiction of this court, but * * * is about to remove from the jurisdiction of the court, and has no intention of remaining within said jurisdiction, and that his removal from the jurisdiction will endanger the amount due from said Majer Appel to your petitioner. Wherefore

your petitioner prays that a writ of ne exeat may issue for the arrest of said Majer Appel." The writ issued on the same day, and the bankrupt was duly arrested thereupon. On July 27th, he obtained his liberty by executing before a commissioner the following instrument:

"Recognizance for Appearance.

[Filed July 30, 1906.]

"United States of America, District of Massachusetts, ss.—City of Pittsfield.

"Be it remembered that on this twenty-seventh day of July A. D. 1906, before me, a commissioner duly appointed by the District Court of the United States for the said District of Massachusetts, personally came Majer Appel of Brooklyn in the State of New York and David Appel of the city, county and State of New York, and jointly and severally acknowledged themselves to owe the United States of America the sum of two thousand five hundred dollars, to be levied on their goods and chattels, lands and tenements, if default be made in the condition following, to wit:—

"The condition of this recognizance is such, that if the said Majer Appel will not go or attempt to go into parts beyond the jurisdiction of the District Court of the United States for the District of Massachusetts without the leave of said court or until further order of said court, and then and there abide the judgment of the said court, and not depart from said district without leave, then this recognizance to be void, otherwise to remain in full force and virtue.                    Majer Appel. [Seal.]
                                          "David Appel. [Seal.]

"Taken and acknowledged before me on the day and year first above written.

"[Seal.]                                   Arthur H. Wood,
     "Commissioner of the United States for the District of Massachusetts.

"United States of America, District of Massachusetts, ss.—

"David Appel, a surety on the annexed recognizance, being duly sworn, deposes and says that he resides at 248 East 7th Street, in the city of New York, that he is a freeholder in the city of Brooklyn, New York, that he is worth the sum of three thousand dollars, over and above all his just debts and liabilities, in property subject to execution and sale, and that his property consists of real estate in said Brooklyn. David Appel has deposited with me two thousand five hundred dollars in cash as bail money.

                          "[Affiant's Signature]   David Appel.

"Sworn to and subscribed before me, this twenty-seventh day of July, A. D. 1906.

"[Seal.]                                   Arthur H. Woods,
     "Commissioner of the United States for the District of ———."

The deposit of $2,500 was later handed over by the commissioner to the clerk of the District Court.

On March 12, 1907, the judge of the District Court affirmed the order of the referee directing the bankrupt to turn over to the trustee $6,000. On April 29, 1907, the trustee filed a petition in the District Court, alleging the arrest and release of the bankrupt, that the bankrupt had "committed various breaches of said bond," and "that demand had been made upon said surety for the penal sum of said bond, and the money deposited in the clerk's office." The trustee, therefore, prayed that the sum of $2,500 might be ordered to be paid by the clerk of the District Court to the petitioner as trustee in bankruptcy. There was a hearing in the District Court, at which both the bankrupt and the surety were present. The decree recited "that no breach of the conditions of said bond had been committed, as more fully appears in the opinion of the court," and it denied the petition. On reference to

the opinion of the learned judge, we find that he ruled as matter of law that the absence of the bankrupt from the district from time to time after the bond was given did not amount to a breach of the bond. This was the ground upon which the trustee's petition was dismissed. The record, as presented to this court, is informal in several respects, but it appears generally, and both counsel are agreed, that this court must first answer the following question: Was the learned judge of the District Court right in ruling that the bond given for the bankrupt's release was in effect a bail bond, binding him only to abide the decrees and orders of the District Court when rendered, and in other respects leaving him free to absent himself from the court's jurisdiction? The trustee contended, in accordance with the wording of the bond, that it was conditioned upon his remaining constantly within the jurisdiction.

An examination of the practice of the English Court of Chancery, as set out in the decided cases and in accepted text-books, leads us to the conclusion that the bond should receive its grammatical construction, and that it binds the bankrupt not to go into parts beyond the jurisdiction without leave of the court of bankruptcy. Musgrave v. Medex, 1 Mer. 49; Utten v. Utten, 1 Mer. 51; 2 Dan. Ch. Pr. (6th Am. Ed.) p. 1712. This rule has peculiar application to the case of a bankrupt who is required by the general scheme of the bankruptcy act to be constantly on hand in order that he may assist the trustee in his administration of the estate.       •

We hold the decree of the District Court erroneous and reverse it, because it sets out that the bankrupt's absence from Massachusetts was not a breach of the bond. We hold that this absence was a breach of the bond, but we recognize that weighty courts have held that, while a bond given to procure the release of one arrested under a writ of ne exeat regno differs from an ordinary bail bond in requiring the constant presence of the principal within the jurisdiction, yet the chief object of the two obligations is the same, viz., to obtain security that the principal shall abide (not perform) any decree which the court may render against him. 14 Enc. Pl. & Prac. p. 320. The penal sum of the bond in the case at bar is already in the disposition of the District Court. In Harris v. Hardy, 3 Hill, 393, the Supreme Court of New York said:

"If the defendant leave the state without permission, an order will be granted directing his sureties to pay the money into court, or, in default thereof, that a suit be brought upon the bond. The writ will be discharged, on paying into court the sum for which it is marked, and upon giving security to abide by the decree. The fund is under the control of the Court of Chancery, and will be disposed of with due regard to the rights of all parties concerned."

The learned district judge seems to have found no evidence that the bankrupt had not always been ready to abide the decrees of the court of bankruptcy, although he had personally departed from the jurisdiction. Acting either upon the analogy of a court of equity or of the power possessed by courts of the United States in actions at law, a court of bankruptcy has power to chancer a bond. Sun Printing & Publishing Association v. Moore, 183 U. S. 642, 662, 22 Sup. Ct. 240,

46 L. Ed. 366; 8 and 9 Wm. III, c. 11; Rev. St. § 961 (U. S. Comp. St. 1901, p. 699). It may well be that the District Court will refuse to enforce the liability of the surety upon this bond, and will relieve him from that liability, basing its action, not upon the want of a technical breach of the bond, but on the broader ground that the result sought by the obligation has not yet failed. We are not required to pass upon these questions. The record is not full enough. Inasmuch as the decree contains a recital which we deem erroneous in law, we must reverse it; but we do so with leave to the District Court to proceed further in the matter in accordance with the rules of equity.

The decree of the District Court is reversed, and the case is remanded to that court, with directions to proceed in accordance with our opinion passed down the 13th day of August, 1908; and the petitioner recovers his costs in this court.

NOTE.—The following is the opinion of Dodge, District Judge, on petition to pay over money deposited as bail for bankrupt:

DODGE, District Judge. Upon a writ of ne exeat, issued by this court on July 27, 1906, the bankrupt, as appears by the return on the writ, was arrested and taken before an officer at Pittsfield, in this district, duly qualified to take bail in cases pending in any one of the United States courts. By order of that officer he was committed to the Pittsfield jail in default of bail. On the same day, however, a bond of recognizance was executed by the bankrupt as principal and one David Appel as surety in the sum of $2,500. The surety deposited $2,500 with the clerk of the court, agreeing that it should be held as bail or security for the performance of the bond. The bankrupt was then released from custody.

The present petition, filed by the trustee April 29, 1907, alleges that the bankrupt has committed various breaches of this bond, and that demand has been made upon the surety. It asks that the amount deposited may be ordered to be paid by the clerk to the trustee of the bankrupt's estate, to be disbursed by him as assets of the estate.

The bond referred to was filed in court on July 30, 1906. It is in the form of a recognizance taken before a United States commissioner, Mr. Wood, of Pittsfield, the officer referred to in the return upon the writ. The bankrupt and his surety acknowledge themselves to owe the United States of America $2,500, to be levied on their goods and chattels, lands and tenements, if default be made in the condition expressed in the bond, which is that the bankrupt "will not go or attempt to go into parts beyond the jurisdiction of this court without the leave of the court, or until the further order of the court, and then and there abide the judgment of said court, and not depart from said district without leave."

When the writ was issued, a petition was pending before the referee for an order directing the bankrupt to turn over to his trustee certain property alleged to have been concealed by him. The trustee, in his petition for the issue of the writ, set forth the pendency of this proceeding, and represented that the bankrupt had removed his residence from this district since the bankruptcy proceedings were begun, was about to remove himself from the jurisdiction of the court, and that such removal would "endanger the amount due" from him to the trustee. The writ was issued in order to prevent any obstruction of the proceedings before the referee then pending, or of such further proceedings as the trustee might institute for the enforcement of the referee's orders therein, by the bankrupt's absence from the district. The bond was given in order to secure the bankrupt's presence in the district whenever required for the purposes of any proceedings such as are above indicated.

Thereafter, on January 12, 1907, the referee made an order, on the petition referred to, that the bankrupt pay over $6,000 to the trustee. The bankrupt filed a petition for review of this order. This was argued by both sides before the court, and the referee's order was affirmed March 12, 1907. It ap-

pears that the referee reissued his order on March 21, 1907, and again reissued it on April 2, 1907; but, the original order having been affirmed, these reissuances did not add to or affect the bankrupt's duty of compliance with it. He has been bound to comply with it ever since March 12, 1907, and if he failed to do so it was for the trustee to have him summoned to show cause why he should not be adjudged in contempt.

If such a summons had been issued, and service thereof prevented or obstructed by the bankrupt's absence from the district, or if he had left the district after service, instead of obeying the summons, there would have been a breach of the condition of the bond, which might then have been enforced against the surety or his property.

The trustee, however, has never instituted any proceedings whatever against the bankrupt, based upon his noncompliance with the order. The only breaches of the bond which he now asserts are that the bankrupt has as matter of fact been outside this district since the bond was given without the leave of the court, and that he has not paid any of the money which the referee ordered him to pay. The bankrupt, however, has at all times been represented by counsel within the district, he appeared in court at the hearing on this petition, and he claims (although this is denied) that the trustee assented to his leaving the district on certain occasions when he admits having gone to New York.

I do not think that any breach of the bond has been shown which justifies the court in adjudging the surety liable and ordering his deposit paid over to the trustee. I have indicated above what seems to me the only construction which can properly be given to the condition upon default in which this money was to become due. I do not think the bond can be regarded, in view of the circumstances under which it was given, as anything more than security for his appearance before the court, when required, to abide the judgment which upon such appearance the court might give. I cannot construe it as security for the payment of the amount which the referee might order the bankrupt to pay. See Griswold v. Hazard, 141 U. S. 260, 11 Sup. Ct. 972, 35 L. Ed. 678.

The petition must be denied.